**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**RONALD MARK CLARK, et al.**                                             **PLAINTIFFS**

**v.**                                          **CASE NO. 4:07-CV-00477 GTE**

**JOHN BAKA, M.D., et al.**                                              **DEFENDANTS**

**ORDER ON QUORUM-RELATED DISCOVERY MOTIONS**

Three discovery motions are pending related to written discovery sought by Plaintiffs

from Defendants Quorum Health Resources, L.L.C. ("Quorum") and Continental Casualty

Company ("Continental").   The disputed discovery relates to the hospital management services

that Quorum provided to Saline County Medical Hospital ("SCMH"), Continental's insured.  The

motions include:

> (1)     Quorum's Motion for Protective Order (doc. no. 161)
>
> (2)     Plaintiffs' Motion to Compel Continental to Respond to Plaintiff's 4th Request
>          for Production of Documents (Doc. No. 163).
>
> (3)     Plaintiffs' Motion for Emergency Hearing and to Compel Quorum to Respond to
>          Plaintiffs' First Set of Interrogatories and Requests for Production (Doc. No. 190).

**I.       BACKGROUND**

Plaintiffs contend that the defendant medical providers, Dr. Baka and nurses Andrea Hall

and Patricia Dyer, were negligent in providing medical care and treatment in connection with the

January 3, 2001 labor, delivery and birth of Forrest Manning.   Plaintiffs contend that SCMC (by

its insurer Continental) is vicariously liable for the negligence of Dr. Baka and is independently

liable for its own negligence.  More specifically, Plaintiffs contend that SCMC failed to

adequately train its nursing and hospital staff, failed to ensure the competence of its medical

staff, failed to have and enforce adequate policies and procedures to govern medical staff's care

and treatment of patients such as Forrest, failed to provide adequate supervision to the personnel

caring for Forrest, and were otherwise negligent in the care and treatment of Forrest Manning.

Quorum was not named as a party Defendant in this action initially.  On July 15, 2008,

Quorum was named as a Defendant with the filing of Plaintiffs' Second Amended Complaint.

Plaintiffs contend that Quorum provided hospital management services to Saline County

Memorial Hospital and breached its duty to exercise reasonable care in the hospital management,

operation and supervision services that it provided to the hospital.  More specifically, Plaintiffs

contend that Quorum committed the following negligent acts or omissions:

> a.  Failure to identify the previous events relevant to maternal/fetal care as sentinel events, to undertake a root cause analysis, to undertake re-education efforts with the staff nurses and to change policies and procedures to protect patient safety in the future;
> b.  Failure to apply relevant Joint Commission guidelines and leadership standards;
> c.  Failure to both have and enforce adequate polices and procedures for the care and treatment of patients such as Forrest Manning;
> d.  Failure to provide adequately trained personnel to treat, discharge, and arrange follow-up care for Forrest Manning; and
> f.  Was otherwise negligent.

(Second Amended Complaint at ¶ 5.13).

Plaintiffs contend that the negligent acts or omissions of all the Defendants resulted in

injuries and permanent damage to Forrest Manning.  Plaintiffs seek compensatory damages for

Forrest Manning's physical and mental suffering, permanent loss of earning capacity, and future

medical expenses to be incurred by Forrest Manning after he reaches the age of majority.[1]

---

[1] The Court previously held that Plaintiffs' individual claims, which include medical expenses incurred and loss of earning capacity during Forrest' minority are time-barred. *See* Order filed 10-18-2007, Doc. No. 52.

Plaintiffs also assert that the Defendants acted with reckless indifference such that an award of

punitive damages is justified.

## II.     STANDARD FOR DISCOVERY

In 2000, the Federal Rules of Civil Procedure were amended "to involve the court more

actively in regulating the breadth of sweeping or contentious discovery." Fed. R. Civ. P.

26(1)(a), Advisory Committee Notes to 2000 Amendment.  As summarized by the Eight Circuit:

> In particular, the new rules limit the breadth of discovery that can occur absent court
> approval.  Under Rule 26(b)(1), for example, discovery must now relate more directly to
> a "claim or defense" than it did previously, and "if there is an objection that discovery
> goes beyond material relevant to the parties' claims or defenses, the court would become
> involved."

*Sallis v. University of Minn.*, 408 F.3d 470, 477-78 (2005)(omitting referencing citation).

All discovery is subject to the limitations imposed by Rule 26(b)(2)(C), which provides in

relevant part:

> On motion or on its own, the court must limit the frequency or extent of discovery
> otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained
> from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by
> discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit,
> considering the needs of the case, the amount in controversy, the parties' resources, the
> importance of the issues at stake in the action, and the importance of the discovery in
> resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

Quorum and Continental, as the parties resisting Plaintiffs' discovery requests, have the

burden of establishing that limits should be placed on the discovery.[2]

---

[2] *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508 (N.D.
Iowa 2000).

### III.   QUORUM'S MOTION FOR PROTECTIVE ORDER & PLAINTIFFS' MOTION TO COMPEL

On August 5, 2008, Plaintiffs propounded their first requests for production of documents and first set of interrogatories to Quorum.  The requests for production include some 92 separate requests, some with sub-parts.  The interrogatories include 29 individual interrogatories.  Both specify the relevant time period for which the discovery is requested to be from January 3, 2001, to the present, inclusive, *unless otherwise stated.*

On August 28, 2008, Quorum filed a Motion for Protective Order.  The motion raises various objections to the written discovery, including that the requests are unreasonable, unduly burdensome and oppressive.  More specifically, Quorum complains that the number of interrogatories and requests for production both exceed the maximum permitted number of 25 each and that Plaintiffs have requested confidential patient and financial information, information relevant solely for punitive damages, attorney work product and privileged information. Finally, Quorum challenges the "Designated Time Period" as too broad.

On September 8, 2008, Plaintiffs filed their response to Quorum's motion.  Therein, Plaintiffs state that the issues in dispute have been narrowed substantially.  Plaintiffs state that counsel have reached the following agreements:

> 1.   Plaintiffs have withdrawn four interrogatories, reducing the total number of their interrogatories to 25.

> 2.   Plaintiff have limited their Request for Production 1(f) to correspondence between Quorum and third-party payors concerning the care or treatment of Becky Manning and/or Forrest Manning;

> 3.   In response to Request for Production No. 10, Quorum has agreed to produce all organizational charts which show the relationship between the corporate Defendants in 1999, 2001, and 2002;

4.      Quorum has agreed to produce all documents responsive to Request for Production Nos. 11 and 12; and

5.      Quorum has agreed to produce documents responsive to Plaintiffs' requests for the following time frame: 1998-2002.[3]

Plaintiffs state that the following issues remain:

1.      Time frame;

2.      Request No. 13 regarding Quorum's financial status;

3.      Request Nos. 5 and 15 regarding Prior Complaints/Claims against Quorum and prior settlement agreements; and

4.      Interrogatories 2, 3, 4, 8, 9 and Requests 2, 3, 16.[4]

On September 17, 2008, Plaintiffs filed their Motion for Emergency Hearing and to Compel Discovery seeking to compel Quorum's responses to the same outstanding written discovery.  In response to Plaintiffs' motion, Quorum filed a short response suggesting that a ruling on its then pending motion for protective order would resolve the issues raised in Plaintiffs' motion to compel.  In reply, Plaintiffs argue that a ruling on Quorum's motion will not resolve all of the issues raised in Plaintiffs' motion and urge the Court to direct Quorum to respond fully to all outstanding discovery.

The Court will begin by addressing the specific issues raised by Quorum in its motion for protective order.  It will then turn to Plaintiffs' motion to compel.

---

[3] Pl.'s response, Doc. No. 174, at p. 1-2.

[4] *Id*. at p. 2.

- 5 -

### A.      Quorum's Motion for Protective Order

#### 1.      Time frame

The definition section of Plaintiffs' requests for production and interrogatories specifies a "Designated Time Period" to which the discovery requests relate to be from "twenty four months prior to and including the date of the occurrence through the present" unless otherwise stated. Thus, a default time period of January 3, 1999, through the present, is specified. Many, if not most, of the requests for production, however, specify a different time period. For example, requests for production nos. 20 - 92 all specify a  time period of January 1, 1995 through December 31, 2002.

Quorum states that it has agreed to produce documents from 1998-2002,  but it objects to producing documents from 1995, 1996, and 1997, and documents from 2002 to the present, the other years covered by Plaintiff's so-called "Designated Time Period." Quorum argues that the requested time period is unreasonably broad in scope and not relevant to this lawsuit.   Plaintiffs cite to a recent statement by my colleague Judge Wilson that "[t]he majority of courts have held that five years before the first violation is a reasonable time frame for discovery." *Nuckles v. Wal-Mart Stores, Inc.*, 2007 WL 1546092 (E.D. Ark.).  That statement was made in the context of a copyright violation.  Neither it, or the other cases relied upon by Plaintiffs, establish a bright-line rule for the resolution of disputes over the proper scope of discovery.

The scope of discovery varies with the circumstances of each particular case.  Rule 26(b)(1) of the Federal Rules of Civil Procedures contemplates that discovery should be relevant to claims or defenses asserted in the case.  Otherwise, a showing of good cause must be made to justify expanding discovery to include "discovery of any matter relevant to the subject matter of the action." Fed. R. Civ. P. 26(b)(1).

- 6 -

Plaintiffs argue that an April, 1999 incident involving birth injuries to Magen Higgins was a "sentinel event" that should have alerted Quorum to the need for immediate investigation and response, including policy changes, for the protection of patient safety. Plaintiffs reason that five years prior to Magen Higgins' birth is April, 1994, and therefore that it is reasonable to seek documents going back to January 1, 1995.[5]

The claim in this case is that Quorum's negligence caused injuries to Forrest Manning in 2001. Plaintiffs' theorize that events in 1999 should have alerted Quorum to the need for policy changes. Quorum has agreed to provide documents going back to 1998, a year prior to the alleged "sentinel event."

The Court notes that the documents requested are wide-ranging in scope and suggestive of a fishing expedition rather than a targeted request for documents directly relevant to Plaintiffs' claims. The Court concludes that the four year time-period proposed by Quorum is adequate. If Plaintiffs find anything in the discovery to be provided that clearly supports the need to obtain additional discovery for the years 1995 through 1997, they may renew their request for such extended discovery. Proceeding in this fashion will protect Quorum from burdensome and expensive discovery while allowing Plaintiffs ample opportunity to obtain information relevant to their allegations.

---

[5] Plaintiffs' counsel has also sued Quorum for negligence in connection with Magen Higgins' birth and that of a third child. Plaintiffs' pleadings indicate that both cases are presently pending in the Circuit Court of Saline County, Arkansas.

### 2.      Request No. 13 regarding Quorum's financial status

This disputed request reads:

> **REQUEST NO. 13** Your Financial Status: The following documents concerning your financial status for the purpose of informing the jury on the subject of your net worth in order to determine the proper amount of punitive damages in this case:
>
> (a)      Your corporate financial statements for the past five (5) years;
>
> (b)      Your corporate income tax returns for the past five (5) years;
>
> (c)      Your profit and loss statements for the past five (5) years.

Courts differ on whether pre-trial discovery of a defendant's financial statements and tax returns, relevant only for purposes of assessing punitive damages, may be had.  Some courts allow such pre-trial discovery as long as plaintiff's punitive damages claim "is not spurious" which is determined by assessing whether sufficient facts have been alleged to make a claim for punitive damages.  *See, e.g., Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 34 (D. Kan. 1996).   Other courts excuse defendants from producing discovery regarding their financial condition and net worth until plaintiff has established a case for punitive damages.  *See, e.g., Sargent v. Farmers Ins. Exchange*, Eastern District of Arkansas Case No. 4:03-cv-255 JMM (Docket no. 50).  In the past, this Court has, more often than not, not required such financial information to be produced during discovery.

In the Court's view, a case-by-case approach is best in order to ensure that plaintiffs have the financial information necessary to assess the value of their case while protecting defendants from unwarranted intrusions into their financial affairs.  In this case, Plaintiffs have not, in the Court's view, alleged facts sufficient to indicate a basis for a punitive damages claim against Quorum.  The Court recognizes that discovery is ongoing, and this observation is no reflection on whether such facts may be found to exist.  However, in the Court's view Quorum should not be

required to produce financial information during discovery.  If Plaintiffs' punitive damages claim

survives a summary judgment motion, the Court will reconsider this ruling.[6]

### 3.        Requests Nos. 5 and 15 regarding prior complaints, claims against Quorum and prior settlement agreements

The disputed requests read:

> **REQUEST NO. 5**  Other complaints/claims against you: The following documents relating to patients or patients relatives who have made complaints, criticisms or claims against you relating to the labor and delivery care and treatment of any person in the past ten years:
>
>    (a)      Any written notice of claim;
>
>    (b)      Petitions or other suit papers filed against you.
>
> **REQUEST NO. 15**  Settlement agreements with other plaintiffs/claimants: Any and all settlement agreements between Defendant and any other plaintiffs and/or claimants arising out of disputes concerning allegations of medical malpractice and/or professional negligence involving labor and delivery for the past five years.

Quorum objects that both requests are unduly burdensome and not reasonably calculated

to lead to the discovery of admissible evidence.  Plaintiffs counter that the requests are limited to

complaints, claims and settlement agreements relating to labor and delivery care, which are

highly relevant to issues in this case.   The Court concludes that Request No. 5, seeking

complaint and claim information for a ten year period is too broad in scope.  Quorum shall

answer the request for the period 1998 through 2002. If Quorum has been sued in state or federal

court on the basis of such claims it will be sufficient to provide the identity of the court and the

style of the case(s).

---

[6] The Court observes that, if a case is made for punitive damages, the current net worth (not income statements) is the appropriate financial information to be produced.

The Court concludes that Request No. 15, requesting settlement agreements for medical malpractice or professional negligence, need not be answered as written.  Quorum shall identify those claims, which presumably would have been identified in response to Request No. 5, which it resolved by settlement, but it need not provide copies of settlement agreements.

### 4.        Interrogatories 2, 3, 4, 8, 9 and Requests 2, 3, 16

**Interrogatories 2, 3, 9** and **10** have been withdrawn by Plaintiffs to comply with the limit on the number of interrogatories imposed by Fed. R. Civ. P. 33.

Quorum complains that **Interrogatory No. 4** not only requests the identity and location of each witness expected to be called at trial, but also requests that Quorum state the "subject matter of the expected testimony."  Quorum complains that it should not be required to detail "expected testimony" of its witnesses.  The Court does not view this interrogatory as requesting a detailed summary of expected testimony.  There is nothing privileged or unduly burdensome about identifying the subject matter, in a general fashion, about which a witness is expected to testify.  Quorum must answer this interrogatory.

**Interrogatory 8** requests that Quorum identify all other persons or entities, if any, that it contends were negligent and which negligence was responsible for Plaintiffs' injuries. The interrogatory further requests Quorum, in addition to identifying such persons or entities, to:

(b)    Set out specifically and with particularity each and every act and/or omission of the person and/or entity which you believe or contend constituted negligence resulting in the injuries and/or the damages allegedly sustained by Plaintiffs herein.

(c)    Set out each and every fact which supports your belief and/or contention in subpart (b) above.

(d)    Identify, by name and address, and general description, each and every document which you believe and/or contend supports its answer to subparts (b) and (c) above.

Quorum objects that the request is overbroad in scope.  The Court agrees that it is

overbroad to the extent that it begins by asking Quorum to answer the question on behalf not

only of Quorum, but of Quorum, its employees, agents, and representatives.  Quorum has

indicated that, despite its objection, it will supplement its response after discovery is completed

to the extent it is able to do so.  This response is adequate.  If Quorum intends to contend at trial

that the negligence of any party or entity is responsible for, or contributed to, the injuries of

Forrest Manning, then it shall attempt, to the best of its ability, to answer this interrogatory.  It

may point out facts and identify documents as requested in subparts (b) and (c) in a general

fashion.  These requests arguably venture into the attorney work product area when answered by

counsel and are arguably better answered by those persons identified in subpart (a).

**Request for Production No. 2** reads:

Documents used to refresh recollection: Any and all documents referred to or otherwise
used to refresh recollections about the occurrence or incidents in question, in providing
answers to oral or written discovery questions or requests in this case.

Quorum objects that this request is vague and overly broad.  Further, Quorum argues that

the request arguably requires its attorneys to turn over any documents used in discussions with

any person or potential witness who may be deposed or has knowledge needed to respond to

discovery requests.  To do so, Quorum argues, would impinge upon the attorney work-product

privilege.  The Court will not attempt to re-write this request to make it less vague, less broad,

and less burdensome.  It need not be answered.

**Request for Production No. 3** reads in pertinent part:

Prior notice correspondence: Any and all notes, correspondence or other
documents/documentation relating to the occurrence in question and/or the Plaintiffs,
generated or received by you, your agents or employees in the normal course of affairs,
before receiving formal notice by Plaintiffs' attorney of the instant suit, including but not

limited to any and all correspondence between you and your professional liability insurance carrier regarding Becky Manning and/or Forrest Manning.

Quorum objects that the request seeks information that was prepared in anticipation of litigation and may be protected as attorney work-product. Plaintiffs suggest that by limiting the request to documents prepared before receipt of formal notice of this lawsuit, Quorum could not have been anticipating litigation. Quorum's only objection to this request appears to be that it calls for the disclosure of attorney work-product. While there may be a valid objection to the disclosure of some or all of the responsive documents, a blanket objection is not in order. Quorum may list any documents withheld as privileged on its privilege log, but it shall attempt to answer the request. *See* Fed. R. Civ. P. Rule 26(b)(5).

**Request for Production No. 16** requests production of "copies of any oral, written or recorded statements from any healthcare provider with regard to Becky Manning and/or Forrest Manning and/or the events described in Plaintiffs' Complaint." Quorum objects that to the extent its attorneys have secured such statements, they are protected as attorney work product. Again, Quorum should respond to this request and may identify any documents withheld as privileged on its privilege log.

### B.    Plaintiffs' Motion to Compel

Plaintiffs seek to compel Quorum to fully respond to the discovery requests at issue in Quorum's motion for protective order. Plaintiffs' motion simply recites, in a table format, each and every discovery request, Quorum's objection to same, and Plaintiffs' response thereto.

Plaintiffs objects that Quorum's blanket objections are improper. Citing Local Rule 33.1, Plaintiffs complain that Quorum has improperly failed to state with particularity the ground or grounds for its objection and interposed blanket objections.

- 12 -

Repetitive form objections are not favored.  However, Quorum has provided more than just blanket objections to many of the discovery responses.  For example, in response to Request No. 36, requesting copies of documents regarding "Staffing Directions" consultation services available from January 1, 1995 through December 31, 2002, Quorum objects that the request is "overly broad, unduly burdensome, and not intended to lead to the discovery of admissible evidence."  Quorum's response continues, however, to advise Plaintiffs that the requested information was not a service provided from January 1, 1999 through December 31, 2002.

The Court is more forgiving with Quorum in this instance based on the obvious need to narrow the time frame of the requests, the broad sweeping nature of the requests, and the tenuous connection of many of the requests to the claims asserted.  Going forward, the Court urges the parties to be as specific as possible when objecting to a discovery request.  For example, when objecting that a request is not relevant, explain why.  When objecting that a request is burdensome or oppressive, explain how.  Consider submitting affidavits or other evidence to reveal the nature of the burden.

The Court has resolved all of the specific disputes identified by Quorum in its motion. Plaintiffs have not identified any further disputes with specificity, but simply requested a general ruling in their favor.  The Court concludes that Plaintiffs' motion should be denied.

**IV.     PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM CONTINENTAL**

Plaintiffs seek to compel Continental to provide documents responsive to 35 requests for production contained in Plaintiffs' Fourth Request for Production of Documents.  Following the filing of the motion, Continental filed supplemental responses to the discovery request.  Plaintiffs

in their reply request that Continental be directed to fully respond to each and every document

request.[7]

Continental has grouped the documents requests in a way the Court finds helpful.  The

Court will discuss the disputed discovery based on such grouping.

**Request Nos. 1, 2, 3, 4, 5, 6, and 7**

These requests seek documents reflecting contracts, correspondence, and consulting

services between SCMC and Quorum, as well as documents reflecting educational or other

services that Quorum provided at the hospital or the hospital requested that Quorum provide.  A

time period of 1997-2003 is specified.  Continental has agreed to provide responsive documents

for the time period 1997-2001.   Continental argues that any document dated in 2002 or beyond is

not reasonably calculated to lead to the discovery of admissible evidence.

The Court finds that the document production for the five year period proposed by

Continental is adequate.   The Court notes that Plaintiffs will be provided documents for almost a

year following the January 2001 incident that is the subject of their lawsuit as well as documents

for a full four years before the incident.

**Request Nos. 8, 9, 10, 11, 12, and 13**

These requests seek "job descriptions" for the hospital administrator, chief executive

officer, president, vice president, and chief information officer for the period 1997 through 2003.

---

[7] Plaintiffs' assertion in both its motion and reply that "Continental has still failed to produce even a single document in response" is somewhat misleading.  It appears that Continental and Quorum were both awaiting the Court's ruling on a dispute over whether responsive documents could be produced subject to a protective order.  That dispute was resolved in the Court's Order filed on September 29, 2008, Doc. No. 214.  The Court understands that Continental and Quorum are both in the process of producing responsive documents.

Continental has agreed to provide the requested job descriptions in effect in January of 2001, when the alleged negligence occurred.   Plaintiffs contend that Continental should be required to produce the requested job descriptions for the entire five year period because the actions of the hospital's personnel in the years leading up to Forrest's birth injuries are relevant and discoverable.

The Court will require the requested job descriptions for the calendar years 1999 and 2000, if different from those in effect in January of 2001, to be produced

**Request Nos. 14, 15, 16, 17, 18, and 19**

These requests seek documents "reflecting the job duties" of the same positions referenced in Requests 8-13 for the time period 1997 through 2003.  Continental objects to the time frame and also to the substance of the request.  Continental argues these requests are either duplicative of the preceding requests for "job descriptions" or vague and ambiguous or overwhelmingly broad.  The Court agrees.  Continental need not respond to these requests.

**Request Nos. 20, 21, 22, 23, 24, and 25**

These requests seeks documents "reflecting the leadership roles" of the same positions referenced in Requests 8-13.  The Court agrees with Continental that the requests are vague, ambiguous and unduly burdensome.  They need not be answered.

**Request No. 26**

The request seeks contracts between SCMC and Billie R. Thomas, M.D.  This issue is moot as SCMC, after researching its records, has no responsive documents and has so advised Plaintiffs.

**Request No. 27**

- 15 -

The request seeks documents "reflecting services provided to Saline County Medical Center by Billie R. Thomas, M.D. Vice President of Medical Affairs between 1997 and 2003." Continental objects, contending the phrase "reflecting services provided" is vague and ambiguous and too broad in scope. Continental argues that the unlimited nature of the request would include the production of all medical records for services provided by Dr. Thomas. The Court agrees that the request is too broad in scope. It need not be answered.

### Request No. 29

The request seeks all "[p]olicies and procedures at Saline County Medical Center in effect on January 3, 2001." Continental objects that this request for every policy in the entire hospital as irrelevant, unduly burdensome and harassing. The Court agrees and this request need not be answered.

### Request No. 30

The request seeks documents "reflecting the activities of the Strategic Quality Management Committee at Saline County Medical Center between 1997 and 2003." Continental contends this information is protected by the quality assurance and review privilege provided by Arkansas law. See Ark. Code Ann. § 16-46-105. Plaintiffs have not shown otherwise. This interrogatory need not be answered.

### Request No. 28, 31, 32, 33, 34, and 35

Request No. 28 seeks the policies and procedures of the Strategic Quality Management Committee. Requests 31 through 35 relate to the procedures and mechanisms in place to identify, perform or report "sentinel events" and "a root cause analysis." Continental states that

- 16 -

without waiving its objections to these requests, it will produce the requested policies and

procedures in effect in January of 2001, but not for any other period.

The Court will not require Continental to produce anything further at this time.

Following receipt and review of Continental's upcoming production, Plaintiffs may renew their

request for responsive documents for an additional time period.  If Plaintiffs elect to do so, they

shall explain how such documents are reasonably calculated to lead to the discovery of

admissible evidence and why the documents provided are not sufficient.

## CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Quorum Health Resources' Motion for Protective

Order (Doc. No. 161) be, and it is hereby, GRANTED IN PART AND DENIED IN PART as

stated herein.  IT IS FURTHER ORDERED THAT Plaintiffs' Motion for Emergency Hearing

and Motion to Compel Quorum to Respond to Written Discovery (Doc. No. 190), be, and it is

hereby, DENIED.

IT IS FURTHER ORDERED THAT Plaintiffs' Motion to Compel Continental Casualty

Company's Responses to Requests for Production (Doc. No. 163) be, and it is hereby

DENIED except as otherwise stated herein.

IT IS SO ORDERED this   9th   day of October, 2008.


_/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE

- 17 -