## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**RONALD MARK CLARK, Individually
and as Next Friend and Guardian of
Forrest Manning, a Minor; and MARGARET
KELLY CLARK, Individually and as Next
Friend and Guardian of Forrest Manning, a
Minor**                                                  **PLAINTIFFS**


**v.**                    **Case No. 4:07-cv-477-DPM**


**JOHN BAKA, M.D. and JOHN V. BAKA,
M.D., P.A.**                                          **DEFENDANT**S


### ORDER

After a three-week trial in February, a twelve-person jury returned a

verdict in favor of Dr. Baka.[*] The Court has entered judgment on that verdict.

*Document No. 484.*  The Clarks move for a new trial; and Dr. Baka moves for

costs.  Dr. Baka requests oral argument, but the papers cover this ground well.

**1. New Trial.**  The Court denies the Clarks' motion for a new trial.  This

case was well and carefully tried by both parties.  None of the Clarks' reasons

for retrying the case have merit; and the Court knows of no reason of record

---

[*]As at trial and in earlier orders, "Dr. Baka" means both Defendants.

that would justify this extraordinary relief.   FED. R. CIV. P. 59(a)(1)(A);

*McKnight By and Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400

(8th Cir. 1994).

Judge Eisele's decision ending discovery in December 2008 did not, in

the Court's view, prejudice the Clarks for several reasons.  First, the Court

recalls no motion to reopen discovery (either before or after I took over the

case) and the docket reveals no such motion.  Second, the Clarks presented

detailed testimony from their grandson's doctors, teachers, and family

members.  Much of this, of course, was about the boy's difficult birth and

initial treatment.  But there was also plenty of information about his school

performance, his cognitive abilities and deficiencies, and his daily life.  Mrs.

Clark gave particularly detailed and compelling testimony about what this

young man can and cannot do—including at the present time.  Third, the

Court received school records through 2010 into evidence.  Fourth, at the

Clarks' request and over Dr. Baka's objection, the Court allowed Dr. Naramor

(the Clarks' neuropsychology expert) to testify about her September 2009

follow-up evaluation. Dr. Naramor testified at some length about how, in her

opinion, the boy's cognitive functioning was trending down.  In sum,

notwithstanding the practical need to stop discovery at some point, the jury got plenty of information about the boy's current condition.

The Court stands by its decision on what the Clarks called a "Day In The Life" video. As the Clarks' authorities indicate, this kind of video is informative. But the Clarks did not offer a video about a typical day for their grandson. They offered several video clips: one showed the boy having difficulty catching a football, while the others showed Dr. Naramor performing psychological testing on the boy. The Court allowed the catch clip and rejected the testing clips. The rejected portions simply did not show this young man dressing, playing, eating, riding his bike, doing homework, or using a computer—the usual daily activities of a ten-year-old boy.

The Court also disagrees that Jody Hagen's expert testimony for Dr. Baka justifies a new trial. First, Dr. Hagen would not have been able to offer any opinions about the boy's cognitive functioning had the Clarks not chosen to use Dr. Naramor's 2009 supplemental evaluation, which was otherwise inadmissible under the scheduling order. *Document No. 431*, *at 3–4*. Second, the Clarks did not move to strike Dr. Hagen's testimony, or otherwise make any objection to its scope, during the trial. Third, the Court thought the

Clarks' cross-examination of Dr. Hagen was particularly effective.   For example, the Clark's counsel eventually got Dr. Hagen to agree (albeit reluctantly) that this young man had a learning problem because he had brain damage.   This was one of the take-your-breath moments of the trial—a big concession in the Clarks' favor.

Finally, events during deliberations provide no basis for a new trial. The Court has no question about the verdict's reliability: the evidence did not clearly weigh for either side; this was a case for the jury to decide.   The parties made their case to this jury for thirteen days—including two days when the courthouse was otherwise shut down because of snow.   The jurors were attentive throughout; most of them took lots of notes.   The Court submitted the case in the middle of day thirteen.   And the jury deliberated for about four hours before going home for the night.

The jury continued deliberations throughout day fourteen.   In the morning, the Court proposed a plan for the day to counsel: if the jury was still deliberating mid-afternoon, call the jurors in and tell them arrangements had been made for them to work into the evening and on Saturday, rather than breaking for the weekend.   Counsel for both parties agreed.   In the early

afternoon, the jury asked a question about proximate cause.  After consulting with counsel, the Court answered by referring the jury to the agreed instruction on proximate cause.  The Court recalls no confusion here; instead the jury was wrestling with one of the key liability issues.  About an hour later, and as planned, the Court brought the jurors in and told them they would keep working until about 7:00 p.m. and then start fresh Saturday morning.  The Clarks did not object; they had agreed to this schedule.  The jury deliberated about an hour and a half more and then returned its verdict. The Court polled the jury at the Clarks' request.  And each juror confirmed his or her verdict for Dr. Baka.  After all the effort these jurors put into this case, the argument that this verdict was the product of a "let's get out of here for the weekend" attitude is hollow.

 2.  **Costs.**  Dr. Baka asks for $13,916.28 for deposition expenses and $3,346.54 for copying and exhibit expenses—a total of $17,262.82 in costs. *Document No. 490-5, at 1.*  The Clarks object, contesting specific items in the bill and urging that costs be denied entirely in light of the Clarks' strained finances. *Document No. 488, at 2–11.*

Federal Rule of Civil Procedure 54(d) creates a presumption that "costs—other than attorney's fees—should be allowed to the prevailing party."  And 28 U.S.C.A. § 1920 defines the costs the Court may, in its informed discretion, tax against losing parties such as the Clarks. *See generally Little Rock Cardiology Clinic P.A. v. Baptist Health*, 591 F.3d 591, 601–02 (8th Cir. 2009). Dr. Baka seeks costs for "printed or electronically recorded transcripts" and for "exemplification and the costs of making copies[.]" 28 U.S.C.A. § 1920(2) & (4) (West Supp. 2011).  The Court has "broad discretion" to award these costs or not. *Little Rock Cardiology*, 591 F.3d at 601.

• **Transcribed Depositions and Video Depositions.**  Most of the costs sought by Dr. Baka are associated with depositions.  First, the Court agrees with the Clarks that Dr. Baka should not be awarded costs for the 31 December 2008 deposition of Dr. Zimmerman.  Because Dr. Zimmerman's erata changes necessitated another deposition, Dr. Baka should not recover the $228.75 cost of this second deposition.

The Clarks also argue that costs should not be awarded on sixteen of Dr. Baka's deposition invoices because they are un-itemized.  The Court agrees in part.  Some of the invoices are at least minimally itemized.  (For example,

the invoice for Dr. Phillips's deposition states that the cost is for one certified copy of the transcript.)  The Court finds this sufficient.

Several of the deposition invoices that Dr. Baka submitted, however, are completely un-itemized.  *Document No. 490-2 at 1, 5, 10, 12, & 17.*  These particular invoices do not indicate whether the costs represent only necessary expenses (such as the certified copy of the transcript) or whether they also contain some convenience expenses (such as extra fees for an expedited copy). Because Dr. Baka has not shown with specificity the costs associated with these un-itemized deposition invoices, the Court denies those costs.  The Court also denies costs for expediting transcripts, e-transcripts, ASCII & condensed transcripts, color copies, color exhibits, second sets of exhibits, processing and delivery charges, early-appearance fees, and after-hours rates. Dr. Baka has made no showing that any of these extras was necessary.  The Court therefore awards $6,799.27 in allowable transcript costs, as represented in the itemized invoices submitted by Dr. Baka.  *Document No. 490-2, at 2–4, 6–9, 11, 13–16, 19–20, & 28.*

Dr. Baka also seeks reimbursement for videoing several depositions. These costs are recoverable under § 1920.  *Craftsmen Limousine, Inc. v. Ford*

*Motor Co.*, 579 F.3d 894, 897–98 (8th Cir. 2009).  But when a deposition is also transcribed, courts disagree about taxing both transcription and video expenses.  *Compare E.E.O.C. v. CRST Van Expedited, Inc.*, No. 07-cv-95-LRR, 2010 WL 520564, at *4–*5 (N.D. Iowa 9 February 2010), *with Rohrbough v. Hall*, No. 4:07-cv-996-ERW, 2010 WL 4940954, at *2 (E.D. Mo. 30 November 2010). Dr. Baka seeks video deposition costs for thirteen depositions that were also transcribed.  *Document No. 490-2, at 21–27.*  Of these, the only ones used at trial were those of Dr. Baka ($150), Becky Manning ($1,080), L. Wingo, C. Mattis, and K. Schmidt ($804.25 collectively).  Again, the Court denies costs for postage, shipping and handling, and after-hours rates because Dr. Baka has made no showing that any of these extras was necessary.  The Court will allow $2,034.25 in costs for video copies of the depositions used at trial.

But Dr. Baka has made no adequate showing about the necessity of video copies of the remaining depositions.  He says only that he "required copies of these video depositions to prepare for the trial of this case." *Document No. 489, at 4.*  Helpful the videos no doubt were, but helpfulness does not establish necessity.  *CRST Van Expedited*, 2010 WL 520564, at *6.  The Court is not persuaded that these copies were "necessarily obtained for use

in the case."  28 U.S.C.A. § 1920(2) (West Supp. 2011).  Nor has Dr. Baka

shown the necessity of certain after-hours costs and shipping fees.

"Defendant must do more than submit an itemized statement of its costs.

Defendant must show that [the action taken and the associated costs were]

necessary for the case, and not because it was the most convenient course of

action."  *Luster v. Baptist Medical Center*, No. 4:04-cv-486-WRW, 2007 WL

1443221, at * 2 (E.D. Ark. 16 May 2007).  These remaining video costs are

therefore denied.

In total, Dr. Baka requested $13,916.28 in costs "for printed or

electronically recorded transcripts." *Document No. 490-5, at 1.* In its discretion,

the Court finds that $8,833.52 of those costs—$6,799.27 for deposition

transcripts and $2,034.25 for video deposition recordings—were necessary.

All other deposition-related costs are denied.

• **Copies and Demonstrative Exhibits.**  Dr. Baka seeks $1,744.49 for

copies and binding costs.  *Document No. 490-3, at 1.*  He says that he had four

copies of his exhibits made and bound: "an original, a copy for the judge, a

copy for the witness, and a working copy."  *Document No. 489, at 3.*  The first

three sets were required by the Court and were therefore "necessarily

-9-

obtained for use in the case[.]"  28 U.S.C.A. 1920(4) (West Supp. 2011).  Of course Dr. Baka needed a copy to work with too.  The $1,744.49 for copying and binding the four sets of exhibits is therefore allowed.

Dr. Baka's last request is for $1,601.75 in costs for demonstratives.  This figure includes costs for thirty black-and-white trial boards, one color trial board, and three flip charts.  *Document No. 490-4, at 1*.  Beyond the invoice, there is no indication of how many of these exhibits were actually used at trial.  Dr. Baka believes all these demonstratives were necessary to the presentation of the case.  *Document No. 489, at 2–3*.

"Neither side has presented their arguments with sufficient specificity to allow the Court to make an item by item determination of whether [Dr. Baka] is entitled to recover costs" for each of the thirty-four boards and charts.  *Chism v. New Holland North America, Inc.*, No. 2:07-cv-150-JTR, 2010 WL 1961179, at *8 (E.D. Ark. 13 May 2010).  The Court nonetheless concludes that at least half of Dr. Baka's demonstrative exhibits were necessary and helpful in presenting the case to the jury.  He is therefore entitled to $800.88 of these requested costs.

• **Reduction for Indigency.** The Court may consider a losing litigant's inability to pay in exercising informed discretion about costs. *Cross v. General Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). To that end the Clarks submitted information about their finances under seal. *Document No. 497*. The record is now clear, however, that their finances are beside the point because the Clarks are not obligated to pay any costs awarded; their lawyers are. *Ibid*.

*   *   *

Motion for new trial, *Document No. 487*, denied. Amended motion for costs, *Document No. 490*, granted in part and denied in part. Original motion for costs, *Document No. 485*, denied as moot. The Clerk shall tax $11,378.89 against the Clarks. Here is a summary:

Deposition Transcripts . . . . . . . . . . . . . . . . . . . . . . . . . . . $6,799.27

Deposition Videos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2,034.25

Copies of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,744.49

Demonstratives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $800.88

Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $11,378.89

If the Clarks file a timely notice of appeal, then enforcement of the costs award is stayed (without bond) until seven days after the Eighth Circuit issues its mandate.

So Ordered.

*DPMarshall Jr.*
_____
D.P. Marshall Jr.
United States District Judge

<u>19 July 2011</u>